Opinion
FOSTER, J.
Plaintiff, Leroy Griffith, appeals from a judgment for defendant, City of Monrovia, in an action for damages for personal injuries. The appeal is on a settled statement.
On July 14, 1979, members of the Monrovia Police Department responded to a call of shots being fired. At the scene, suspicion attached to plaintiff, who was placed under arrest, handcuffed, and walked a dis *Supp. 8 tance of 25 or 30 feet by a police officer to the rear seat of a police car. When so placed, plaintiff “began to make inquiries as to what was going on and became vocal. Between five and ten minutes after he was placed in the police car plaintiff began to kick, yell, and writhe around in the back seat of the police car while still handcuffed. At that time plaintiff was sprayed by Mace from a Monrovia policeman.” The spraying caused injury to plaintiff’s head, face and scalp.
Plaintiff filed a complaint against the City of Monrovia, alleging causes of action for battery and false arrest. At the conclusion of plaintiff’s case, the trial judge dismissed the false arrest cause of action on the ground that in the criminal prosecution, in which the charges were dismissed, a specific finding of probable cause had been made. He also dismissed the cause of action for battery, ruling that under section 844.6 of the Government Code,[1] plaintiff was a “prisoner” at the time of his alleged injury and the city was immune from tort liability.
On appeal appellant challenges only the ruling dismissing the battery cause of action.
No reported decision has defined the status of a person under arrest as being included within the term “prisoner,” as that word is used in section 844 of the Government Code[2] or as being excluded from that section.
In Dátil v. City of Los Angeles (1968) 263 Cal.App.2d 655 [69 Cal.Rptr. 788], a public entity employer was held to be not liable for the death of an individual who had been arrested, taken to the central jail and booked, and from there transported to another jail facility, where he was attacked by a fellow prisoner and killed. In defining the term “prisoner,” the Court of Appeal noted that section 844 uses the word “includes” and construed that word as evidencing a legislative intent to give a broad meaning to “prisoner.” It noted that a popular meaning of prisoner is a “person ‘under arrest,’ ‘in custody,’ ‘in jail,’ ‘in prison’ . . . .” (263 Cal.App.2d 655 at p. 659.) Similarly, in Jiminez v. *Supp. 9 County of Santa Cruz (1974) 42 Cal.App.3d 407 [116 Cal.Rptr. 878], the Court of Appeal, in holding a county immune from an action for the alleged wrongful death of a ward of the juvenile court placed in a camp facility, followed the approach of Dátil.
Conversely, in Larson v. City of Oakland (1971) 17 Cal.App.3d 91 [94 Cal.Rptr. 466], the Court of Appeal gave an expressly narrow construction of section 844 in a personal injury action by one who had been struck in the face by a police officer before being placed under arrest. And in Patricia J. v. Rio Linda Union Sch. Dist. (1976) 61 Cal.App.3d 278 [132 Cal.Rptr. 211], a similar strict construction was given in circumstances of a juvenile offender who had been released to the custody of her parents.
More recently, in Meyer v. City of Oakland (1980) 107 Cal.App.3d 770 [166 Cal.Rptr. 79], the city appealed from a judgment for plaintiff who had been injured in an assault by a fellow inmate while under civil commitment to a jail facility for alcoholism. In rejecting the contention that the city was immune from liability, the Court of Appeal stated:
“Authoritative indication of the legislative intent underlying so-called ‘prisoner immunity’ (of which § 844 is the definitive component) may be found in the report of the California Law Revision Commission on which the Legislature relied when it adopted the Government Tort Claims Act in 1963. (A Study Relating to Sovereign Immunity (Jan. 1963) 5 Cal. Law Revision Com. Rep. (1963) p. 1 et seq.; see Patricia J. v. Rio Linda Union Sch. Dist., supra, 61 Cal.App.3d 278 at p. 284.) The pertinent passages of the report demonstrate that the commission recommended adoption of the doctrine of ‘prisoner immunity’ in the interest of ‘correctional policy,’ of the proper supervision of ‘convicts’ and ‘prison inmates,’ and of ‘effective penology.’ (5 Cal. Law Revision Com. Rep., supra, at pp. 421-425.)
“The commission’s terminal recommendation is stated as follows: ‘It would seem, on the whole, that no tort liability should be admitted for damages sustained as the consequence of conditions which are common to all inmates and which simply represent a reasonable application of general policy determinations by responsible prison or jail authorities with respect to the administration of such institutions ....’ (5 Cal. Law Revisions Com. Rep., supra, at p. 425 [italics added].)
*Supp. 10 “The quoted language emphasizes the Law Revision Commission’s— and the Legislature’s—view that ‘prisoner immunity’ is a necessary adjunct of penology and corrections in the overall ‘administration of. . .institutions’ conventionally discharging those functions. Neither function is involved in the governmental activity prescribed in Penal Code section 647, subdivision (ff), which does not define a criminal offense. It identifies the effect of its application as 'civil protective custody’ (Italics added.) It implements the ‘civil’ limitation by providing that ‘[n]o person who has been placed in civil protective custody shall thereafter be subject to any criminal prosecution.. . based on the facts giving rise to such placement. .. . ’ (See fn. 2, ante [italics again added here].)” (107 Cal.App.3d pp. 776-777.)
Support for the view that the Legislature, in defining the term “prisoner” in sections 844 and 844.6 intended to limit it to inmates of jails and other correctional facilities incarcerated as a part of the penal process is provided by contrasting those sections with Government Code section 845.8, as amended in 1970. (Stats. 1970, ch. 1099, § 8, p. 1958.) That section now provides in pertinent part: “Neither a public entity nor a public employee is liable for:
“(b) Any injury caused by:
“(1) An escaping or escaped prisoner;
“(2) An escaping or escaped arrested person; or
“(3) A person resisting arrest.” That the Legislature, in another section of the same chapter, found it necessary to mention both the category of an “escaping or escaped prisoner” and an “escaping or escaped arrested person” is evidence that it drew a distinction between the two and believed an arrested person had not been previously included within that immunity. (See also: Ne Casek v. City of Los Angeles (1965) 233 Cal.App.2d 131, 139-140 [43 Cal.Rptr. 294].)
Since plaintiff in the present case, although under arrest, had not yet been incarcerated in a penal facility, we believe he was not a “prisoner” within the meaning of sections 844 and 844.6 of the Government Code. It was error, therefore, to rule that the City of Monrovia was immune from liability.
*Supp. 11 The judgment is reversed, with directions to grant to plaintiff a new trial on the battery cause of action.
Bernstein, P. J., and Rothman, J., concurred.

 Section 844.6 provides in pertinent part:
“(a) Notwithstanding any other provision of this part ... a public entity is not liable for:
“(1) An injury proximately caused by any prisoner.
“(2) An injury to any prisoner.”

Section 844 provides: “As used in this chapter, ‘prisoner’ includes an inmate of a prison, jail or penal or correctional facility.”