[Civ. No. 49207. First Dist., Div. Two. Feb. 7, 1983.]

DOLLIE MAY, Plaintiff and Appellant, v.
COUNTY OF MONTEREY et al., Defendants and Respondents.

COUNSEL

Timothy T. Flynn and Brunn, Lacey & Thayer for Plaintiff and Appellant.

Richard E. Holbrook, Holbrook & Lankes, Kevin L. Clark and Trimbur, Davis & Clark for Defendants and Respondents.

OPINION

ARNE, J.*—Dollie May, plaintiff in an action for damages for the death of her minor son, appeals from judgments in favor of defendants and respondents Monterey and Stanislaus Counties and Dale J. Graver, Chief Probation Officer of Stanislaus County. The judgments were based on demurrers sustained and summary judgments granted on theories of governmental immunity. At the time of his death the decedent was a ward of a juvenile court under the direction and control of one or both counties by virtue of a dispositional order placing him at a juvenile correctional center; as such he was a "prisoner" within the meaning of the relevant immunity provisions of the Government Code.[1] (§§ 844.6, 845.6; *Jiminez* v. *County of Santa Cruz* (1974) 42 Cal.App.3d 407, 410-412 [116 Cal.Rptr. 878].) Appellant contends that the immunity provisions

---

*Assigned by the Chairperson of the Judicial Council.

[1] Hereafter all code references are to the Government Code unless otherwise indicated.

do not apply to an action for the wrongful death of a prisoner and that in any event there is a triable issue of material fact as to whether the respondents, having reason to know that the decedent was in need of immediate medical care, failed to take reasonable action to summon such medical care. We disagree with appellant; we conclude that the trial court's rulings were correct. Accordingly, we affirm.

1. *The Demurrers.*

■ The decedent drowned in a reservoir at the juvenile correctional center. By the first two causes of action of her complaints against respondents, appellant asserted theories (1) that the reservoir was in a dangerous condition and was not properly guarded or posted against swimming, and (2) that respondents were negligent in their supervision and control of the decedent's swimming activities. Respondents' demurrers to these two counts, based on the governmental immunity provided by section 844.6, were sustained.

Section 844.6 provides among other things that "a public entity is not liable for . . . [¶] . . . [a]n injury to any prisoner." For this purpose "injury" is defined to include death. (§ 810.8.)

Appellant argues, narrowly, that an action for wrongful death is, under Code of Civil Procedure section 377, based not on "injury" to the decedent but upon a theoretically distinct injury to the heirs, and therefore that the immunity provisions of section 844.6 are inapplicable. She relies on *Garcia* v. *State of California* (1967) 247 Cal.App.2d 814, 817 [56 Cal.Rptr. 80], which held that an action for wrongful death of a prisoner allegedly caused by a dangerous condition of public property *could* be maintained under subdivision (c) of section 844.6. *Garcia* made clear that the rule it announced was limited to dangerous-condition claims: "No liability is imposed upon a public entity by reason of the death of a prisoner resulting from an act of the prisoner himself, acts of other prisoners, acts of prison employees, or acts of prison invitees, whether committed negligently or wilfully." (*Ibid.*) Appellant seeks a rule which would extend not only to dangerous conditions but also to negligence and which therefore would be substantially broader than *Garcia's.*

While we acknowledge respectable textual support for the rule appellant seeks (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 4.13, pp. 347-349), we conclude that appellant's position is not the law. We have previously assumed (without discussing the issue) that wrongful death actions are generally subject to the immunity stated in section 844.6. (*Jiminez* v. *County of Santa Cruz, supra,* 42 Cal.App.3d 407, 410-412); we now so hold. Subdivision (c) of section 844.6 was amended in 1970 in a manner

which, in our view, made clear that the immunity *Garcia* perceived with respect to wrongful death claims, other than those predicated on dangerous conditions, applied to dangerous conditions as well. In a recent decision, *Lowman* v. *County of Los Angeles* (1982) 127 Cal.App.3d 613, 615-617 [179 Cal.Rptr. 709], another Court of Appeal has concluded that as it now reads section 844.6 precludes actions against public entities for the wrongful death of prisoners regardless of the underlying theory of liability. *Lowman* does not challenge the theoretical distinction between a prisoner's action for his own injuries and an heir's action for a prisoner's wrongful death; rather, *Lowman* concludes in necessary effect that it is the Legislature's intent that public entities be immune from claims of *both* kinds. We agree with the *Lowman* reasoning.

■ In 1970 the Legislature amended sections 844.6 and 856.2. In the amendment to section 856.2, the Legislature specifically included immunity for "wrongful death" to an escaped or escaping person who has been confined for mental illness or addiction. From that fact appellant argues that by not specifically including such immunity for wrongful death in its amendment to section 844.6, the Legislature meant thereby to exclude immunity for wrongful death.

We do not agree. Since section 810.8 applies to all of division 3.6, which includes both sections, the specific inclusion of "wrongful death" in the amendment to section 856.2 is redundant surplusage, and nothing more. If appellant's argument were accepted in this case, the same proposition would logically apply with equal force to every section of division 3.6 in which the word "injury" appears.

Although the Legislature did not include immunity for wrongful death in its 1970 amendment to section 844.6, the Legislature did not, in fact, amend any section of division 3.6 to include immunity for wrongful death except section 856.2. It could, in fact, have amended any or all such sections in which the word "injury" appeared. However, if, by not so amending section 844.6, one concludes that the Legislature intended to delete immunity for wrongful death from that section, then it would follow that the Legislature must have intended the same effect in all other sections which were not so amended and in which the word "injury" appeared. We conclude that had the Legislature intended such a far-reaching result, it would have done so by the simple, direct and unambiguous act of deleting the word "death" from section 810.8.

2. *The Summary Judgments.*

Section 845.6 grants general immunity to a public entity or employee "for injury proximately caused by the failure of the employee to furnish or obtain

medical care for a prisoner in his custody." ■ Appellant's third count against each respondent undertook to bring her claim within an exception, embodied in section 845.6, for a situation where "the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Respondents moved for summary judgments with respect to this count and their motions were granted. To uphold the trial court's action we must be satisfied (1) that respondents' showing either negated a necessary element of appellant's case or stated a complete defense, and (2) that appellant's showing in opposition created no triable issue as to a fact material to respondents' showing: "[N]o amount of factual conflicts upon other aspects of the case will affect the result . . . ." (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].) The record before us meets both requirements.

In support of their motions respondents relied primarily on the declarations of five witnesses whose consistent accounts were that the decedent had been swimming with other wards when, at about 1:12 p.m., he encountered difficulty and went under the water, that vigorous rescue efforts were made and an ambulance and units from the sheriff's office and fire department were called to the scene, but that the decedent could not be found and remained under water until approximately 3:45 p.m., at which time he was obviously dead. Appellant argues that this showing was insufficient to establish that respondents had summoned *medical* care. But clearly the respondents' showing was addressed not to whether they had summoned medical care but to whether any arguable failure to have done so could have been deemed a proximate cause of the decedent's death. Proximate cause was a necessary element of plaintiff's case, and we are satisfied that respondents' showing negated proximate cause. The melancholy fact is that medical care could not have been afforded to the decedent until he was found, and that despite apparently vigorous and good faith efforts he was not found until long after medical care could have helped him. (Cf. *Lucas* v. *City of Long Beach* (1976) 60 Cal.App.3d 341, 349-350 [131 Cal.Rptr. 470].) Appellant argues that an autopsy report stating the cause of death, tendered by respondents, was not properly before the trial court for purposes of the summary judgment motion. She is probably right but the point is irrelevant: The five properly submitted declarations amply demonstrate that medical care would have been useless.

Appellant's showing in opposition to the motion for summary judgment raised questions of detail as to time intervals and to the qualifications of persons who were at or summoned to the scene, but created no triable issue as to any fact material to proximate cause.

The judgments are affirmed.

Rouse, Acting P. J., and Smith, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 13, 1983. Grodin J., did not participate therein. Bird, C. J., was of the opinion that the petition should be granted.